IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Michael Lopez, | ) |
| | ) Case No.: 09 C 3349 |
| Plaintiff, | ) |
| | ) Judge Feinerman |
| v. | ) |
| | ) Magistrate Finnegan |
| CITY OF CHICAGO et. al., | ) |
| | ) |
| | ) |
| Defendants. | ) JURY DEMANDED |

**DEFENDANTS' RULE 56.1(a)(3) STATEMENT IN
SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Defendants Vito Ricciardi, Benito Lugo ("Defendants Officers"), and the City of Chicago, by and through their attorneys, present their Local 56.1(a)(3) Statement of Uncontested Facts in support of their Motion for Summary Judgment.[1] In support thereof, Defendants state the following:

**JURISDICTION AND VENUE**

1. Jurisdiction is admitted pursuant to 28 U.S.C §§ 1331 and 1343(a) and jurisdiction for Plaintiff's state claims is based on supplemental jurisdiction pursuant to 28 U.S.C. §1367(a). Venue is proper in the Northern District of Illinois because all the alleged acts occurred within this district. **Plaintiff's First Amended Complaint at ¶¶ 2-3, attached hereto as Exhibit A.**

**PARTIES**

2. At all times herein mentioned, Michael Lopez ("Plaintiff") was a resident of the United States and resided in Chicago, Illinois. **Ex. A at ¶ 4.**

---

[1] Defendants submit this statement of uncontested facts for purposes of their motion for summary judgment only. They do not admit the truth of these facts for any other purpose.

3. At all times herein mentioned, Defendant Officers Ricciardi and Lugo were employed by the City of Chicago Police Department and were acting under color of state law and as the employees, agents, or representatives of the City of Chicago Police Department. **Ex. A at ¶ 5.**

4. The City of Chicago ("City") is a municipality organized under the laws of the State of Illinois, and was the employer of Defendant Officers at all relevant times. **Ex. A at ¶ 7.**

## *INTRODUCTION*

5. At all relevant times, Plaintiff and Melanie Lopez were in an estranged husband and wife relationship. **Michael Lopez's Deposition at 24:11-13, attached hereto as Exhibit B; Melanie Lopez's Deposition at 33:23-34:17, attached hereto as Exhibit C.**

6. In the early morning hours of January 19, 2008, Ms. Lopez and Steven Fouts were spending time together at Mr. Fouts' apartment. **Steve Fouts' Deposition at 18:2-3, attached hereto as Exhibit D.**

7. On January 19, 2008, between 4:00 a.m. and 5:00 a.m., Plaintiff arrived to Mr. Fouts' apartment, located at 3643 North Pulaski Road, Chicago, Illinois. **Ex. B at 39:8-9, 44:1-4; Ex. D at 22:24-23:1.**

8. The only people in Mr. Fouts' apartment at that time were Plaintiff, Mr. Fouts, and Ms. Lopez. **Ex. B at 47:24-48:2.**

9. While Plaintiff was at Mr. Fouts' apartment, he had "four or five" beers. **Ex. B at 45:18-46:10; Ex. D at 25:7-8.**

## *THE TRESPASS COMMITTED BY PLAINTIFF*

10. Plaintiff was asked to leave Mr. Fouts' apartment "once from Melanie and once from Mr. Fouts," yet Plaintiff "didn't leave right when they told [him]." **Ex. B at 50:23-51:2, 55:16-17, 60:1-13, 88:7-8; Ex. C at 41:1-2, 47:13-16; Ex. D at 12:19-21, 27:18-21.**

11. Plaintiff stated to Ms. Lopez that he would "'leave, but let [him] finish what [he] was saying.'" **Ex. B at 51:18-21.**

12. Ms. Lopez and Mr. Fouts had asked Plaintiff to leave again. **Ex. B at 88:9-11.**

13. Mr. Fouts wanted Plaintiff to leave the apartment "to get the – from [Ms. Lopez] and [Plaintiff] from bickering at one another." **Ex. B at 88:17-89:1; Ex. C at 38:15-17; Ex. D at 26:13-14, 27:7-12.**

14. In the words of Mr. Fouts, Plaintiff "was raising his voice, screaming, acting crazy with his voice. You couldn't even – You couldn't even understand what he's saying, just hollering." **Ex. D at 27:24-28:5; Ex. C at 40:11-12.**

15. While Ms. Lopez was in the kitchen of Mr. Fouts' apartment, she called 911 because she wanted Plaintiff out of the apartment. **Ex. B at 52:15-19, 53:13-15, 53:22-54:2; Ex. C at 43:7-10, 47:22-24; Ex. D at 12:21.**

16. Plaintiff tried to "push [Ms. Lopez] down the stairs as [she] was on the phone with 911." **Ex. C at 41:12-17, 78:22-79:4.**

17. After Ms. Lopez called the police, Plaintiff "exited the apartment." **Ex. B at 54:17-19.**

18. Ms. Lopez told the 911 operator that Plaintiff tried push her down the stairs. **Ex. C at 79:5-7, 79:12-14.**

19. When Plaintiff exited Mr. Fouts' apartment, he "walked down onto the – to Pulaski Avenue." **Ex. B at 54:20-55:11.**

## *POLICE RESPOND TO THE 911 CALL FOR HELP*

20. Defendant Officer Ricciardi received information from the dispatcher that there was a domestic disturbance involving a hammer located on the 3600 block of North Pulaski. **Vito Ricciardi's Deposition at 17:22-18:6, 19:6-13, attached hereto as Exhibit E; Benito Lugo's Deposition at 15:16-20, attached hereto as Exhibit F.**

21. When Defendant Officer Ricciardi arrived to the scene, he observed Plaintiff exiting the apartment building. **Ex. E at 23:17-23; Ex. F at 18:6-9.**

22. Plaintiff was stopped by Defendant Officers in the courtyard of Mr. Fouts' apartment building. **Ex. B at 58:6-13.**

23. When Plaintiff first encountered the Defendant Officers, they said "'[c]ome with us'" back into Mr. Fouts' apartment building. **Ex. B at 56:6-20; Ex. F at 19:9-11.**

24. Plaintiff does not know which Defendant Officer spoke with him first. **Ex. B at 57:21-24.**

25. Once brought back to the apartment lobby, Defendant Officer Ricciardi stayed with Plaintiff. **Ex B at 58:18-24.**

26. Defendant Officer Ricciardi asked Plaintiff "what the problem was" and Plaintiff replied, "I was asked to leave, and that's what I was doing when you guys pulled up." **Ex. B at 59:1-6, 59:19-24.**

27. One or more police officers then went upstairs to speak with Mr. Fouts and Ms. Lopez. **Ex. B at 60:16-19**.

28. Defendant Officer Ricciardi went upstairs to where the 911 call came from and Defendant Officer Lugo stayed with Plaintiff. **Ex. E at 26:19-20, 27:3-6; Ex. F at 20:24-21:3.**

## *PROBABLE CAUSE IS CONFIRMED*

29. When Defendant Officer Ricciardi went upstairs and knocked on the door, Ms. Lopez answered. **Ex. E at 27:17-23.**

30. Mr. Fouts and Ms. Lopez told Defendant Officer Ricciardi that Plaintiff was asked to leave the apartment, but he refused to leave. **Ex. B at 60:16-19**; **Ex. E at 31:12-15, 32:15-33:3.**

31. Ms. Lopez further told Defendant Officer Ricciardi that Plaintiff became irate and started yelling and screaming; however, it was just a verbal altercation and she did not want Plaintiff arrested. **Ex. B at 60:16-19; Ex. E at 28:9-16.**

32. Defendant Officer Ricciardi gave another officer on the scene a criminal complaint for Mr. Fouts to sign. **Ex. A ¶ 25; Ex. E at 39:1-4, 11-13.**

33. According to Mr. Fouts, he did not learn until the next day that the paper he signed was a criminal complaint for trespass against Plaintiff. **Ex. D at 42:18-19; 43:20-22.**

## *PLAINTIFF IS TAKEN INTO POLICE CUSTODY*

34. Plaintiff was arrested on January 19, 2008, at approximately 9:10 a.m. **Ex. E at 60:10-13.**

35. At the time Plaintiff was taken into police custody, Plaintiff was in the lobby of Mr. Fouts' apartment complex with Defendant Officers. The vestibule of Mr. Fouts' apartment building was "[a]bout 5' by 10'." **Ex. B at 63:22-24, 65:12-13, 66:14-17.**

36. Plaintiff was near the exterior door, "facing Officer Ricciardi, [while] Officer Lugo was to [Plaintiff's] right." **Ex. B at 63:22-24, 64:7-8, 67:19-24.**

37. Plaintiff was "4 or 5 feet" from Defendant Officer Ricciardi when he "was instructed to leave" the building. Defendant Officer Ricciardi "took a couple steps back and allowed [Plaintiff] to leave." **Ex. B at 61:1, 65:1-11.**

38. "Because of the conditions – the weather conditions, because of the ice – icy snow and everything, [Plaintiff] said something like 'Well, let me skate my butt out of here'" and Plaintiff was still facing Defendant Officer Ricciardi. **Ex. B at 61:5-8, 66:14-17.**

39. Plaintiff attempted to open the door to leave the apartment building, "when [Officer Ricciardi] grabbed [him] and swung [him] into the wall. [Plaintiff's] head hit the wall." **Ex. B at 61:8-10, 63:18-21, 66:18-20, 67:6:8; Ex. C at 86:24-87-3.**

40. Defendant Officer Ricciardi "grabbed [Plaintiff] by the shoulder or by the back of the arm of the left side." **Ex. B at 67:9-13.**

41. "The left side of [Plaintiff's] head" hit the wall and when Plaintiff landed someplace on the floor, he was handcuffed. **Ex. B at 69:13-16, 72:9:12.**

42. Defendant Officer Lugo was located on Plaintiff's right side when Defendant Officer Ricciardi swung Plaintiff into the wall. **Ex. B at 64: 21-24.**

43. Defendant Officer Ricciardi handcuffed Plaintiff. **Ex. F at 27:21-23.**

44. After grabbing and swinging Plaintiff into the wall, Defendant Officer Ricciardi did not use any other force against Plaintiff. **Ex. B at 74:18-20.**

45. Defendant Officer Lugo did not hit or use any excessive force on Plaintiff. **Ex. B at 74:15-20.**

46. After being handcuffed, Plaintiff was placed in the police car. **Ex. B at 75:4-5.**

47. Plaintiff was given medical attention shortly after he arrived at the police station. **Ex. B at 76:3-7; Ex. F at 34:13-15.**

### THE CHARGES AND PROSECUTION

48. Plaintiff was charged with criminal trespass to land and resisting or obstructing a peace officer in the Circuit Court of Cook County under a case styled *People v. Michael Lopez*, 08

MC1 188757. **Ex. A at ¶ 34; Ex. E at 60:18-61:3; Affidavit of Assistant State's Attorney Ian Cooper at ¶ 3, attached hereto as Exhibit G; Certified Statement of Conviction, attached hereto as Exhibit H.**

49. On March 12, 2008, the criminal trespass to land charge against Plaintiff was stricken with leave to reinstate ("SOL"). **Ex. H.**

50. There are no allegations in the in the complaint that Plaintiff was maliciously prosecuted for criminal trespass to land. **Ex. A ¶¶49-52.**

51. On September 4, 2008, the resisting or obstructing a peace officer charge against Plaintiff was stricken with leave to reinstate ("SOL") by Assistant State's Attorney Ian Copper. **Ex. G at ¶ 4.**

52. There was no evidence heard about probable cause to arrest Plaintiff for resisting or obstructing a peace officer. **Transcript of Criminal Proceedings in People v. Michael Lopez, attached hereto as Exhibit I.**

53. The fact that Plaintiff's criminal charges were dismissed has nothing to do with Plaintiff's guilt or innocence. **Ex. G at ¶ 5; Ex. H.**

                         Respectfully Submitted,

                         s/Helena B. Wright
                         Helena B. Wright

Andrew M. Hale
Avi T. Kamionski
Shneur Z. Nathan
Helena B. Wright
Jonathan Boulahnis
Andrew M. Hale & Associates, LLC
53 W. Jackson, Ste. 1800
Chicago, IL 60604
312-341-9646
Atty No. 6298789