UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| MICHAEL LOPEZ, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | 09 C 3349 |
| vs. | ) | |
| | ) | Judge Feinerman |
| CITY OF CHICAGO, VITO RICCIARDI (Star 16396), | ) | |
| and BENITO LUGO (Star 12270), | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Michael Lopez brought this action under 42 U.S.C. § 1983 and Illinois law against the City of Chicago and Chicago Police Officers Vito Ricciardi and Benito Lugo, alleging various wrongs related to his arrest and his prosecution in state court for resisting arrest. The court dismissed Lopez's substantive due process claim on the pleadings. Doc. 74. Defendants now move for summary judgment on Lopez's false arrest, failure to intervene, and malicious prosecution claims, though not on his excessive force claim. Lopez concedes that he cannot prevail on the false arrest and failure to intervene claims. Doc. 94 at 1. The only issue that remains is whether Lopez's state law malicious prosecution claim raises triable issues of fact. Because it does, summary judgment is denied as to that claim.

**Background**

The following facts are stated as favorably to Lopez as the record permits. On January 19, 2008, Lopez and his estranged wife were at Steve Fouts's apartment. The couple quarreled, Lopez was asked to leave but refused, and his wife called the police. When Lopez finally departed, he came across Officers Ricciardi and Lugo. The officers asked Lopez to return to the

building, where they conducted a brief investigation. After Lopez's wife and Fouts indicated that they did not wish to press charges, Lopez was told he could leave. Lopez, referencing the icy weather, replied, "Well, let me skate my butt out of here." In response, Officer Ricciardi grabbed him, swung him into the wall, and placed him in handcuffs.

Lopez subsequently was charged in the Circuit Court of Cook County, Illinois, with criminal trespass to land and resisting a police officer. On March 12, 2008, on the prosecutor's motion, the state court struck the criminal trespass charge with leave to reinstate. On September 4, 2008, again on the prosecutor's motion, the state court struck the resisting arrest charge with leave to reinstate. In both instances, the motions were made after Officer Ricciardi, the complaining witness and the party responsible for the criminal complaint, failed to appear in court. No evidence was presented on either charge, and neither charge was reinstated.

Lopez filed this action in June 2009. He bases his malicious prosecution claim, brought against Officer Ricciardi and the City, solely on the resisting arrest charge.

**Discussion**

Under Illinois law, a malicious prosecution plaintiff must prove that: "(1) the defendant commenced or continued an original criminal or civil judicial proceeding; (2) the proceeding terminated in favor of the plaintiff; (3) there was an absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Hurlbert v. Charles*, 938 N.E.2d 507, 512 (Ill. 2010) (emphasis deleted and citation omitted); *see also Mosley v. City of Chicago*, 614 F.3d 391, 399 (7th Cir. 2010). The absence of any one element bars the claim. *See Swick v. Liautaud*, 662 N.E.2d 1238, 1242 (Ill. 1996). "In regard to the second element, a malicious prosecution action cannot be predicated on underlying criminal proceedings which were terminated in a manner not indicative of the innocence of the accused."

*Ibid*. Defendants argue that summary judgment is appropriate because Lopez cannot prove that the resisting arrest charge was terminated in his favor. Specifically, they contend that striking a charge with leave to reinstate does not terminate the proceedings and, even if it does, the termination is not indicative of innocence.

Striking a case with leave to reinstate, while not provided for by any Illinois rule or statute, "is common practice in the circuit court of Cook County," where it is used almost exclusively in criminal cases. *Ferguson v. City of Chicago*, 820 N.E.2d 455, 459 (Ill. 2004). Referred to colloquially as an "SOL," the practice is "an odd and much misunderstood creature of Illinois procedure." *Mitchell v. Keenan*, 50 F.3d 473, 475 (7th Cir. 1995); *see also People v. Gill*, 886 N.E.2d 1043, 1048 (Ill. App. 2008) (urging "Cook County prosecutors [to] rethink their use of the archaic practice of motions SOL," and expressing "our fervent hope that this strange and unnecessary practice will not seep out beyond the county's borders"). The effect of an SOL is to remove a case from the trial court's docket while the prosecution technically remains pending against the defendant, sometimes for years. *See Mitchell*, 50 F.3d at 475 (misdemeanor assault charge pending for nine years); *Velazquez v. Sternes*, 151 F. Supp. 2d 946, 950-51 (N.D. Ill. 2001) (possession of stolen property charge pending for over three years). Because the prosecution remains pending, Illinois law holds that an SOL, standing alone, "does not terminate the proceedings against the accused." *Ferguson*, 820 N.E.2d at 459 (citing cases).

The prosecutor, however, does not have the power to reinstate the charges indefinitely. For criminal defendants like Lopez not subject to pretrial detention, the Illinois speedy trial statute requires trial to be held within 160 days of the defendant's trial demand. *See* 725 ILCS 5/103-5(b). Failure to comply with the statute discharges the defendant from the criminal complaint and terminates the pending prosecution. *See People v. East-West Univ., Inc.*, 637

N.E.2d 594, 597 (Ill. App. 1994). An oral trial demand is effective if the demand is entered on the court's docket and is clearly conveyed to the prosecutor. *See People v. Bonds*, 930 N.E.2d 437, 442 (Ill. App. 2010) (citing cases); *People v. Schoo*, 371 N.E.2d 86, 89 (Ill. App. 1977) ("We do not suggest that a demand for trial need always be in writing, although that would be the better practice, but it must be clear, unequivocal and apparent from the record of the case."). If the criminal defendant demands trial, the prosecutor's decision to SOL a charge "cannot toll the speedy trial period." *East-West Univ.*, 637 N.E.2d at 597; *see also People v. Baskin*, 230 N.E.2d 208, 210-11 (Ill. 1967).

Lopez clearly and unequivocally demanded trial. In open court on September 4, 2008, Lopez's attorney stated, "We would like to take a bench trial if one is available today." Doc. 84-10 at 3. When the prosecutor then moved to SOL the resisting arrest charge, the court ruled, "The Defendant demands trial. Case dismissed." *Id*. at 5. Lopez's trial demand was entered on the docket. Doc. 84-9 at 2. The demand commenced the 160-day speedy trial period. *See People v. Snyder*, 337 N.E.2d 108, 109 (Ill. App. 1975) (speedy trial period triggered where defendant made oral demand for trial in prosecutor's presence and demand was entered on the trial court's docket). Because the resisting arrest charge never was reinstated, let alone within the 160-day window, that charge in fact was terminated. *See Velez v. Avis Rent A Car Sys., Inc.*, 721 N.E.2d 652, 656 (Ill. App. 1999); *Snyder*, 337 N.E.2d at 109.

Whether that termination was indicative of Lopez's innocence, however, is a separate issue. To determine whether a termination is favorable, the court examines the circumstances, not the form or title, of the disposition. *See Cult Awareness Network v. Church of Scientology Int'l*, 685 N.E.2d 1347, 1352-53 (Ill. 1997). Termination is not indicative of innocence, and therefore not favorable, if the dismissal "is the result of an agreement or compromise with the

accused, misconduct on the part of the accused for the purpose of preventing trial, mercy requested or accepted by the accused, the institution of new criminal proceedings, or the impossibility or impracticability of bringing the accused to trial." *Swick*, 662 N.E.2d at 1243; *see Horan v. City of Chicago*, 2010 WL 2836729, at *8 (N.D. Ill. July 16, 2010) ("criminal proceeding was not terminated in a manner that indicated plaintiffs innocence [where] the narcotics found in plaintiff's apartment were discovered during an improper search and could not be used as evidence against plaintiff"). But "[w]here the disposition is indicative of a lack of probable cause to bring the earlier case, it will constitute a 'favorable termination' for purposes of asserting a malicious prosecution claim." *Velez*, 721 N.E.2d at 656.

Defendants contend that "[i]t is settled law in Illinois that a charge dismissed on a motion SOL is not indicative of Plaintiff's innocence." Doc. 85 at 12. Their sole authority for this proposition is *Ferguson v. City of Chicago*, *supra*. That case, however, addressed whether a malicious prosecution claim is ripe if brought after an SOL motion but before the criminal defendant's invocation of the speedy trial statute or exhaustion of the speedy trial period—that is, whether there was a termination in the first place, not whether the termination was favorable. To that end, the Illinois Supreme Court held: "Because an SOL order does not finally dispose of criminal proceedings, the circuit court's order … striking the criminal charges against Ferguson with leave to reinstate did not result in a termination, favorable or otherwise, of the criminal case against him. The criminal charges remained pending. It necessarily follows that Ferguson's malicious prosecution claim had yet to accrue." 820 N.E.2d at 459-60. The court did not consider, let alone hold, that innocence cannot be indicated by an SOL disposition that becomes final by operation of the speedy trial statute. To the contrary, the court remarked that "[n]o one disputes that the circuit court's decision to SOL the charges against Ferguson represented a

favorable outcome for him. The point is that, favorable or not, the decision did not have the effect of terminating the case." *Id*. at 460-61.

Where, as here, a charge disposed of by SOL is later terminated by operation of the Illinois speedy trial statute, innocence may be indicated. In *Velez*, for example, criminal proceedings against Velez—predicated on Avis's allegedly malicious criminal complaint—were twice SOL'd at Avis's request. The charges ultimately were terminated after Velez demanded trial and the speedy trial period elapsed. In Velez's subsequent civil case, the Appellate Court of Illinois held that the termination of criminal proceedings under those circumstances might indicate innocence; the court explained that Avis "had ample opportunity to prosecute the case, and, indeed, had been called upon to do so by the plaintiff's demand for immediate trial. Yet, Avis twice refused to proceed to trial on the charges. In our view these [circumstances] indicate that the disposition was premised upon a lack of probable cause and was indicative of the innocence of the plaintiff." 721 N.E.2d at 656-57. Under the principles set forth in *Velez*, where a malicious prosecution plaintiff presents evidence that the prosecutor abandoned a charge because the complaining witness failed to appear for trial, a reasonable jury could conclude that probable cause was lacking and the dismissal was indicative of innocence. *See Edwards v. Vill. of Park Forest*, 2009 WL 2588882, at *6 (N.D. Ill. Aug. 20, 2009) ("a reasonable jury could infer that the lack of probable cause was itself the reason for the officers' failure to appear"); *Mahaffey v. Misner*, 2009 WL 2392087, at *3 (N.D. Ill. July 31, 2009) (failure of complaining witness to appear "supports a finding of favorable termination" and defeats a motion for summary judgment); *Woods v. Clay*, 2005 WL 43239, at *15 (N.D. Ill. Jan. 10, 2005) (genuine issue of material fact existed "as to whether the charges were terminated in plaintiffs' favor [when] Officer Clay failed to appear in court, and as a consequence, those charges were

[SOL'd]"); *see also Petrovic v. City of Chicago*, 2008 WL 4286954, at *10 (N.D. Ill. Sept. 16, 2008) (where charge dismissed *nolle prosequi* "because [the prosecutor's] complaining witness refused to testify[, a] rational jury could find that the *nolle prosequi* indicated her innocence").

Here, there is nothing in the record to suggest that the prosecutor's SOL motion was the result of compromise, misconduct, mercy, new criminal proceedings, or the impossibility of bringing Lopez to trial. In fact, the record indicates that the prosecutor struck the resisting arrest charge because Officer Ricciardi failed to appear. The prosecutor explained, "We're missing a necessary witness, one of whom has never responded to any subpoenas or phone notification of our office. Based on that, the State can't proceed at this time." Doc. 84-10 at 4; *see also* Doc. 101 at 5 (admitting that Officer Ricciardi did not attend the resisting arrest proceedings). Ricciardi's failure to appear at trial could lead a reasonable jury to conclude that the prosecutor's decision to SOL the resisting arrest charge was indicative of Lopez's innocence. Summary judgment therefore is unwarranted.

The cases cited by Defendants do not undermine this conclusion. Defendants invoke *Penn v. Harris*, 296 F.3d 573 (7th Cir. 2002), *Prieto v. Lopez*, 2010 WL 2574227 (N.D. Ill. June 23, 2010), and *O'Neill v. O'Callaghan*, 2002 WL 31133188 (N.D. Ill. Sept. 25, 2002), for the proposition that a complaining witness's failure to appear in court cannot indicate a criminal defendant's innocence. In *Penn*, the Seventh Circuit affirmed summary judgment on a malicious prosecution claim where the plaintiff alleged, without evidence, that an SOL motion was made to protect defendant-officers from "perjur[ing] themselves at trial." 296 F.3d at 577. The decision did not address, let alone decide, the consequences of a complaining witness's absence from court. *O'Neill* explained that no-show witnesses are not indicative of innocence if those witnesses are neither the complaining witnesses nor subpoenaed to appear in court. 2002 WL

31133188, at *9. In *Prieto*, after the plaintiff abandoned his malicious prosecution claim during summary judgment briefing, the court noted in dicta that the criminal proceedings were dismissed because the complaining witness "apparently" failed to appear. 2010 WL 2574227, at *6. The plaintiff did not present any evidence regarding the complaining witness's actions or why the charge ultimately was terminated. As such, the court correctly concluded that the mere fact that "essential witnesses failed to show up in court," without more, could not support a malicious prosecution claim at trial. *Id*. at *7. That is not the situation presented here.

## Conclusion

The motion for summary judgment is granted as to the false arrest and failure to intervene claims, and denied as to the malicious prosecution claim. This case will proceed to trial on the excessive force and malicious prosecution claims. Because Officer Lugo is not named as a defendant in either of the surviving claims, he is dismissed as a party defendant.

April 25, 2011

                                                United States District Judge